**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **J.M. BLANCO, INC.,** | |
| **Appellant,** | **Civil No. 09-1781 (GAG)** |
| **v.** | |
| **PMC MARKETING CORPORATION,** | **Bankruptcy No. 09-02048 (GAC)** |
| **Appellee.** | |

## OPINION AND ORDER

Presently before the court is the appeal by appellant-creditor J.M. Blanco Inc. ("Blanco") of an Order issued by the United States Bankruptcy Court for the District of Puerto Rico, approving and authorizing debtors PMC Marketing Corporation ("PMC") and YMAS Inventory Management Corp. ("YMAS") (collectively the "Debtors") to partially pay the pre-petition claim of another trade creditor, Cesar Castillo, Inc. ("CCI"). The issue on appeal is whether the Bankruptcy Court erred in approving the Debtors' payment of up to $5.8 million for CCI's pre-petition, non-priority, general, unsecured claim, in exchange for CCI's extension of post-petition credit in an amount of up to $5.8 million, with such post-petition extension of credit granted administrative priority.

For the reasons set forth below, the court **AFFIRMS** the judgment of the Bankruptcy Court.

## I.     Jurisdiction

This is an appeal from an Order by the United States Bankruptcy Court for the District of Puerto Rico, issued on June 19, 2009 in Bankruptcy Case No. 09-02048 (GAC). The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. § 1334, which confers jurisdiction on this court as to all matters arising under 11 U.S.C. §§ 101 et seq., and pursuant to this court's resolution dated July 19, 1984, which, in turn, refers all Title 11 matters to the United States Bankruptcy Court for the District of Puerto Rico. This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(3).

## II.     Standard of Review

Appellate courts reviewing a bankruptcy appeal generally apply the "clearly erroneous"

standard to findings of fact and *de novo* review to conclusions of law.  TI Fed. Credit Union v. DelBonis, 72 F.3d 921, 928 (1st Cir. 1995); In re Savage Indus., Inc., 43 F.3d 714, 719-20 n.8 (1st Cir. 1994).  Where the issue on appeal is essentially one of statutory interpretation, appellate courts review the issue *de novo*.  In re San Miguel Sandoval, 327 B.R. 493, 506 (1st Cir. BAP 2005) (citing Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995)).  In addition to the clearly erroneous and *de novo* standards of review, "[t]he appellate court in a bankruptcy appeal may apply an abuse of discretion standard of review of a decision or action by a Bankruptcy Court when such decision is within the discretion of the Bankruptcy Court."  Id. (quoting 9E Am.Jur.2d Bankruptcy § 3512 (2004)).  "Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them."  Perry v. Warner (In re Warner), 247 B.R. 24, 25 (1st Cir. BAP 2000) (quoting Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg., Co., 864 F.2d 927, 929 (1st Cir. 1988)).

### III.     Relevant Facts and Background

The following factual summary is derived from the record on appeal, and contains only the facts necessary to resolve the issues presented in the instant appeal.

Debtors, PMC and YMAS, are domestic corporations engaged in the pharmacy business. PMC operates a chain of thirty-eight drugstores throughout Puerto Rico for the retail sale of its products and has about 742 employees. YMAS manages and purchases the inventory that is consigned to the drugstore chain operated by PMC.

On March 18, 2009, Debtors filed voluntary petitions for relief under the provisions of Chapter 11 of the Bankruptcy Code.  As of that date, Debtors have been managing their affairs and operating their businesses as debtors-in-possession, pursuant to sections 1107 and 1008 of the Bankruptcy Code.  See 11 U.S.C. §§ 1107, 1008.

Prior to the filing of their Chapter 11 petitions, Debtors purchased pharmaceuticals and merchandise sold at PMC's drugstores from three primary distributors: Drogueria Betances, Inc. ("Betances"), CCI and the appellant, J.M. Blanco.  These three distributors hold the largest unsecured claims against PMC for $7,560,000.00, $7,780,000.00 and $6,340,000.00, respectively.

After the Chapter 11 petitions were filed, PMC explored the willingness of these three distributors to provide PMC with post-petition merchandise.  Of the three, CCI was the only one willing to do so on favorable credit terms, provided that it was designated as a critical vendor so that PMC could make payments on CCI's pre-petition claim as it supplied PMC with post-petition merchandise.  Thus, on April 7, 2009, Debtors filed an "Emergency Motion for Entry of an Order Pursuant to Local Bankruptcy Rule 9013 Authorizing Debtors to Pay Pre-Petition Claim of Critical Vendor." (Bankr. No. 09-02048 (GAC), Docket No. 49.)  In their motion, Debtors sought authority to pay aproximately $7.78 million of pre-peition debt to CCI.  Debtors claimed CCI was a critical vendor that refused to provide merchandise under reasonable credit terms without payment of its pre-petition claim.

On April 14, 2009, the Unsecured Creditors Committe in PMC's case (the "Committee")[1] filed an opposition to Debtors' motion (Bankr. No. 09-02048 (GAC), Docket No. 62), as did J.M. Blanco (Bankr. No. 09-02048 (GAC), Docket No. 63).  The opposing creditors argued, in essence, that a bankruptcy court should not depart from the general banktrupcty policy of equal treatment to creditors by paying selected pre-petition vendors prior to the confirmation of a plan of reorganization.  (See id., ¶ 11.)  Such a request should be carefully scrutinized and only granted when the circumstances establish that the selected payments are necessary to the reorganization case and will ultimately benefit all creditors of the estates.  (See Bankr. No. 09-02048 (GAC), Docket No. 62, § 8.)

At a hearing held on May 1, 2009 (see Bankr. No. 09-02048, Docket No. 120), the Bankruptcy Court heard testimony from the chief executive officer of PMC, who was qualified as an expert, as well as the accountant of PMC, that the merchandise supplied by CCI was essential to Debtors' business.  The witnesses for Debtors also testified that the merchandise was critical and that no other vendor was available to offer the same inventory under equal terms and conditions as

---

[1] The Committee was appointed by the United States Trustee on March 26, 2009 (Bankr. No. 09-02048 (GAC), Docket No. 21) and subsequently modified on two occassions, April 15th and 17th of 2009 (See Bankr. No. 09-02048 (GAC), Docket No. 71).  No committee of creditors was appointed in YMAS's case.

CCI.  Furthermore, a witness for the opposing creditors confirmed that the other potential vendor-creditors had been asked to supply the Debtors, but had turned down the opportunity.  The court found that, according to the evidence presented, the payment plan to CCI was essential to the cash flow of the business.  The court also found that the supply of inventory under favorable credit terms would affect the possibility of rehabilitation of the Chapter 11 case and the approval and confirmation of a plan of reorganization.

The terms negotiated with CCI were for the payment of inventory within thirty to forty days, which the court found to be essential because 75% of the merchandise was pharmaceutical and about 90% of it was being sold through medical plans and insurance companies that were taking over thirty days to repay the Debtors.  Debtors and CCI agreed that CCI's pre-petition claim amount of $7.78 million would be paid in a forty-month payment schedule, with specific pricing and payment terms for all of the merchandise.  CCI's estimated net claim of $7.78 million would not be considered an "allowed claim" and the total amount of post-petition credit offered by CCI would be $7 million.  Furthermore, CCI agreed not to file any personal liens against the estate and waived the right to reclamation of inventory under 11 U.S.C. § 503(b)(9),[2] as well as over $440,000 in interests and late charges.  Debtors retained the right to seek damages and to return the pre-petition claim of CCI to the same status if CCI failed to supply the inventory.  Further, the supply agreement would be for the term of the bankruptcy and it would not change the nature or the characteristics of CCI's underlying claim.

In the Minute Entry for the May 1st motion hearing, the Bankruptcy Court prefaced its decision to grant the Debtors' request with the following explanation:

> The Court has before it one of the most controversial aspects of bankruptcy; critical vendors and the issue of discrimination against some unsecured creditors because of repayment of pre-petition debt before approval of a plan of confirmation.  At the same time, debtor has the obligation to manage and conserve the estate and preseve the ongoing concern value of its business.

---

[2] The Bankruptcy Court noted that CCI's right to reclamation of inventory "may or may not be worth very much in view of the fact that Westernbank has a secured claim against all of the assests of the estate."  (Bankr. No. 09-02048 (GAC), Docket No. 120 at 2.)  CCI's inventory rights were estimated at $2.754 million.  (Id.)

1

2

3

4

5

> The Court believes that critical vendor motions and the doctrine of necessity may be applied in this case but should be considered as a very small and careful exception to the rule against discrimination among unsecured creditors in a Chapter 11. We believe that the three prong test enounced in [In re Coserv, LLC, 273 B.R. 487 (Bankr. N.D. Tex. 2002)] is an adequate formula to apply to the motion before us. This is so, even though the facts in Coserve [sic.], as stated by counsel for J.M. Blanco, do not apply squarely to the facts of this case since we are not dealing here with critical employees but rather with payment of prepetition debt of one supplier.

6   (Bankr. No. 02-02048 (GAC), Docket No. 120 at 2.)  The court went on to hold that the evidence

7   presented by Debtors showed that the payment of CCI's pre-petition debt claim was an effective

8   means to insure the substantial enhancement of the estate, that the vendor invovled here is critical

9   to the survival and economic rehabilitation of the Debtors, and that the payment to the critical vendor

10  would insure the necessary inventory, which is indispensable to maintain the going concern value.

11          Thus, the Bankruptcy Court granted the Debtors' request to treat CCI as a critical vendor and

12  authorized Debtors to make payment on CCI's prepetition debt, as well as to obtain post-petition

13  supplies pursuant to credit terms negotiated between the debtors and CCI.  However, the court

14  limited the term of the credit facility to a thirty-day period and limited the amount to $1.5 million

15  of credit, to be used during that period.  The court also required the Debtors to meet with the other

16  two main suppliers, Betances and J.M. Blanco, to determine whether they were willing and able to

17  reach similar supply agreements.  The court indicated that it would consider an extension of the

18  order and additional financing on the same terms, if after the thirty days Debtors were still in need

19  of the inventory and financing terms negotiated with CCI, and the other two vendors could not reach

20  an agreement regarding post-petition financing and sale of inventory.  The Bankruptcy Court further

21  indicated that, as a condition to approval of any critical vendor motion, it would require the parties

22  to treat the unpaid pre-petition debt to CCI as unsecured non-priority debt in the case of default,

23  conversion, or dismissal.  Finally, the court indicated that Debtors' motion did not clarify whether

24  the post-petition financing and line of credit would be given administrative expense status and

25  Debtors were directed to clarify,[3] as well as to file a draft order in accordance with the court's

26

27

---

[3] The court also noted that the source of funds to pay CCI for its pre-petition debt was

1  findings.

2        On May 13, 2009, Debtors filed a motion in compliance with the Bankruptcy Court's order
3  of May 1, 2009, and requested an extension of the bench order.  (See Bankr. No. 09-02048 (GAC),
4  Docket No. 136.)  They indicated that neither of the other two vendors expressed willingness to
5  supply to the debtors pursuant to the same terms as CCI.  They also clarified that CCI had
6  conditioned its credit facilities to the elevation of its pre-petition claim to adminsitrative status, in
7  line with the amount of post-petition credit provided by CCI.  Debtors further requested that the
8  amount of the credit facitlity be increased to the original $7 million or at least to $5 million.
9  Subsequently, the Unsecured Creditors' Committee and J.M. Blanco filed objections (Bankr. No.
10  09-02048 (GAC), Docket Nos. 159, 160) in which they contested the granting of adminsitrative
11  expense rank to the pre-petition debt as a condition for post-petition financing.  Debtors responded.
12  (see Bankr. No. 09-02048 (GAC), Docket No. 173.)

13        On June 16, 2009, the Bankruptcy Court issued an order (Bankr. No. 09-02048 (GAC),
14  Docket No. 190) concluding once again that Debtors were in need of financing, that CCI was a
15  critical vendor, and that CCI was offering to supply the Debtors on favorable terms.  The court also
16  indicated that it would allow the credit facility to be increased to $5.8 million, "especially
17  considering that neither of the debtors other suppliers are willing and able to provide the
18  merchandise pursuant to the same terms." (Bankr. No. 09-02049 (GAC), Docket No. 190 at 3.)  The
19  court held, however, that it would not allow Debtors to elevate CCI's unpaid pre-petition debt to the
20  status of administrative priority.  Notwithstanding, the court did allow CCI to have a post-petition
21  administrative priority equivalent to the amount of post-petition credit, without alteration to the
22  unsecured nature of the pre-petition debt.  The Debtors were directed to file an amended proposed
23  order to comply with these determinations, which Debtors filed on June 19, 2009 (Bankr. No. 09-
24  02048 (GAC), Docket No. 196-1).

25

26  unclear.  In their subsequent motion in compliance, the Debtors clarified that the source of the funds
   to pay CCI would originate from Debtors' operations, including the collection of accounts
27  receivable, and would be disbursed from Debtors' debtor-in-possession account with Banco Popular
   of Puerto Rico.  (See Bankr. No. 09-02048 (GAC), Docket No. 136, ¶ 11.)

1   On that day, the Bankruptcy Court issued an order extending its initial order of May 1, 2009,

2   authorizing Debtors to pay up to $5.8 million of CCI's pre-petition claim in exchange for an equal

3   amount of post-petition credit to be provided by CCI to Debtors, in accordance with the negotiated

4   credit terms and schedule of payments.  The order further established that the unpaid post-petition

5   credit to be provided by CCI would have post-petition administrative priority.  (See Bankr. No. 09-

6   02048 (GAC), Docket No. 198.)

7   The Committe and J.M. Blanco both filed notices of appeal in June and July of 2009,

8   respectively.  (See Bankr. No. 09-02048 (GAC), Docket Nos. 213, 239.)  On August 1, 2009, the

9   Committee moved the Bankruptcy Court for the withdrawal of its notice of appeal.  (See Bankr. No.

10  09-02048 (GAC), Docket no. 286.)  Six days later, the Bankruptcy Court transmitted the record on

11  appeal to the District Court (Bankr. No. 09-02048 (GAC), Docket No. 289) and, on August 10,

12  2009, the appeal was docketed in this court as Case No. 09-1781 (GAG).  J.M. Blanco filed its brief

13  on appeal on August 28, 2009 (Docket No. 2) and PMC filed its appelle's brief on September 18th

14  (Docket No. 3), to which J.M. Blanco timely replied (Docket No. 6).

15  **IV.   Discussion**

16  In its Minute Entry of May 1, 2009, the Bankruptcy Court indicated that it would apply the

17  doctrine of necessity to the critical vendor motion at issue here "as a very small and careful

18  exception to the rule against discrimination among unsecured creditors in a Chapter 11."  (Bankr.

19  No. 02-02048 (GAC), Docket No. 120 at 2.)   The Bankruptcy Court based its decision on the

20  reasoning in In re Coserv, wherein the Bankruptcy Court for the Northern District of Texas

21  elaborated a three-pronged test to determine whether critical vendor payments towards pre-petition

22  debt should be allowed in a given case.  First, the court has to determine whether it is critical that

23  the debtor deal with that particular vendor.  Second, evidence must be provided that, unless the

24  debtor deals with the vendor, the debtor risks a probability of harm (or, alternatively, a loss of

25  economic advantage to the estate or the debtor's going concern value) which is disproportionate to

26  the amount of the vendor's pre-petition claim.  Lastly, the court must determine whether there is no

27  practical or legal alternative by which the debtor can deal with the vendor other than by payment of

1    the claim.  See In re Coserv, 273 B.R. at 498.

2         Having evaluated the evidence before it, the Bankruptcy Court found that the facts supported

3    a conclusion that the Debtors' petition in this case complied with the In re Coserv test.  This court

4    is unwilling to set aside the Bankruptcy Court's findings of fact as they were adequately supported

5    by the record.

6         Appellants point out that the court in In re Zenus Jewelry, Inc., 378 B.R. 432 (Bankr. NH

7    2007) declined to apply the doctrine of necessity to the case before it because it believed that the

8    holding in In re Boston & Maine, 634 F.2d 1359 (1st Cir. 1980) was limited to railroad

9    reorganization cases and not applicable to the case before it.   In re Boston & Maine held that in

10   reorganization proceedings, the "necessity of payment" rule reflects the existence of a judicial power

11   to authorize trustees in reorganization to pay claims where such a payment was exacted as the price

12   of providing goods or services indispensably necessary to continuing to provide rail service.  Id. at

13   1382.  The court noted that the necessity of payment rule did not confer a right to recovery on the

14   claimant but a rule of exculpation, protecting the trustee who paid under economic duress for a

15   supply or service indispensable to the continued operation of the railroad.  See id.  That case dealt

16   with the reorganization of a railroad and the doctrine of necessity did, indeed, arise from previous

17   railroad reorganization cases.  This does not mean, however, that the holding of In re Boston &

18   Maine prevents the Bankrtupcy Court in this case from applying the broader doctrine of necessity

19   as expounded in In re Coserv.

20        The court in In re Coserv based its analysis on section 105(a) of the Bankruptcy Code, which

21   authorizes a bankruptcy court to fashion such orders as are necessary to further the substantive

22   provisions of the Bankruptcy Code, as long as the powers granted by that statute are exercised in a

23   manner that is consistent with the Code.  See 11 U.S.C. § 105.  The court found that what makes the

24   doctrine of necessity "necessary or appropriate to carry out the provisions of" the Bankruptcy Code,

25   see id., is the role that the Bankruptcy Code ascribes to a debtor-in-possession.  A debtor in

26   possession under section 1107(a), like a trustee, is a fiduciary holding the bankruptcy estate and

27   operating the business for the benefit of its creditors and (if the value justifies) equity owners.  See

     In re Coserv, 273 B.R. at 497 (citing 7 Collier on Bankruptcy ¶ 1106.02[3] (15th ed. rev. 2001); In

**Civil No. 09-1781 (GAG)**                                    9

re Smyth, III, 207 F.3d 758, 761 (5th Cir. 2000); Sherr v. Winkler, 552 F.2d 1367, 1374 (10th Cir. 1977)).  "Implicit in the duties of a Chapter 11 trustee or a debtor in possession as set out in [s]ections 1106 and 704 of the Bankruptcy Code is the duty of such a fiduciary to protect and preserve the estate, including an operating business's going concern value." Id.  Thus, pursuant to the debtor in possession's role as the equivalent of a trustee, the bankruptcy court is authorized to use its equitable powers under section 105(a) in aid of preservation or enhancement of the estate.

There is no binding authority from the First Circuit preventing the Bankruptcy Court's application of the In re Coserv analysis under section 105(a) of the Bankruptcy Code to the present case.  Thus, this court finds that the Bankruptcy Court's reliance on In re Coserv was appropriate.

**V.      Conclusion**

After reviewing the record on appeal and the applicable caselaw, as well as the parties' briefs and the orders issued by the Bankruptcy Court, the court finds that the Bankruptcy Court's decision was indeed correct.  Therefore, the judgment of the Bankruptcy Court is hereby **AFFIRMED**.

**SO ORDERED**.

In San Juan, Puerto Rico this 22nd day of December, 2009.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge